MARDY M. SPROULE, ESQ.
California State Bar No. 207048
LAW OFFICES OF MARDY M. SPROULE
15141 Whittier Blvd, Suite 250
Whittier, CA 90603
Tel (323)726-0999
Fax (323)726-0990
Email: Mardy.Sproule@att.net

Attorney for Petitioner, *Omar Santiago Nieto Orozco*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Omar Santiago NIETO OROZCO,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, Acting Attorney General of the United States; MARKWAYNE MULLIN, Secretary of Department of Homeland Security; TODD LYONS, Acting Director, United States Immigration and Customs Enforcement; ERNESTO SANTACRUZ, JR., Acting Field Office Director, Los Angeles Field Office, United States Immigration and Customs Enforcement and Removal Operations; FERETI SEMAIA, Warden, Immediate Custodian, Adelanto ICE Processing Center/Annex; SIRCE OWEN, Acting Director, Executive Office for Immigration Review, *et al.,*<br><br>Respondents. | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS, PURSUANT TO 28 U.S.C. § 2241; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 702–706** |

## INTRODUCTION

Petitioner, Omar Santiago Nieto Orozco ("Omar"), seeks habeas relief under 28 U.S.C. § 2241 and declaratory and injunctive relief under the APA. He challenges Respondents' termination of his December 26, 2018 release from ICE custody as "Paroled pursuant to 8 CFR 212.5" and his resulting detention. The disclosed record identifies no post-release written termination notice, no individualized determination supporting termination or re-detention, and no meaningful custody hearing at which the Government bore the burden to justify continued physical detention.

Petitioner was ten years old when his mother presented herself, Petitioner, and his two younger siblings at the San Ysidro Port of Entry on December 22, 2018, seeking protection after cartel members extorted her and threatened her life in Michoacán, Mexico. DHS initially detained Petitioner with his family, placed him in INA § 240 proceedings, and released him on parole with reporting requirements on December 26, 2018, while he was still a juvenile. That affirmative release decision reflected DHS's determination that Petitioner presented neither a security risk nor a risk of absconding, the governing criteria for parole under 8 C.F.R. § 212.5(b). Within three months, DHS removed his mother's ankle monitor and instructed her that neither she nor the children were required to continue reporting. Petitioner thus grew up in the community under a release decision DHS made when he was a child, rather than remaining continuously detained pending an initial custody determination.

For nearly eight years, Petitioner grew up in the interior of the United States in his mother's care, attended school, and pursued the application for asylum,

withholding of removal, and Convention Against Torture protection filed on his behalf on December 8, 2022. That application remains pending, and his next immigration court hearing was set for July 28, 2027; however, it has now been advanced for final hearing at the Adelanto Immigration Court for November 2, 2026. He turned eighteen year old on May 13, 2026.

On September 24, 2026, Los Angeles Police Department officers took Petitioner into custody in Sylmar, California, on apparent suspicion of public intoxication. No criminal charge has been filed. LAPD released him the following morning. As he walked out of the police station, ICE officers took him into custody without advance written notice, a neutral pre-deprivation hearing, or a meaningful opportunity to contest the asserted basis for re-detention. He has remained detained at the Adelanto ICE Processing Center since September 25, 2026.

Respondents did not apprehend Petitioner while fleeing, and they acted in no emergency. They knew where he lived, held his A-file, and had his pending asylum application. If Respondents contend that his release was parole under INA § 212(d)(5)(A), then 8 C.F.R. § 212.5(e)(2)(i) governed its termination. Outside automatic termination upon departure or expiration, the regulation requires written notice before parole may be terminated. 8 C.F.R. § 212.5(e)(1), (e)(2)(i). The disclosed record identifies neither such notice nor an authorized official's individualized determination that parole's purpose had been served or that neither humanitarian reasons nor public benefit warranted Petitioner's continued presence. Nor does an overnight police hold that produced no criminal charge supply the materially changed circumstances that due process requires before a released person

may be returned to physical custody.

DHS charged Petitioner as an "arriving alien," and, upon information and belief, Respondents treat him under *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and INA § 235(b) as an applicant for admission subject to mandatory detention. This Petition does not depend on ordinary § 1226(a) bond eligibility. It challenges the constitutional and statutory legality of revoking Petitioner's existing release and re-detaining him after nearly eight years of Government-approved release.

Petitioner seeks immediate release under his prior parole conditions. In the alternative, if the Court declines to restore the status quo, he seeks a prompt constitutionally adequate hearing before a neutral decisionmaker at which Respondents bear the burden to prove by clear and convincing evidence that materially changed circumstances justify re-detention and that no less restrictive alternative will reasonably mitigate any flight or danger concern.

Petitioner seeks release during the pendency of this Petition and alleges as follows:

## STATEMENT OF FACTS

1. Petitioner, Omar Santiago Nieto Orozco, is an eighteen-year-old native and citizen of Mexico, born on May 13, 2008 in Michoacán, Mexico. *Ex. 1: Declaration of Petitioner, Omar Santiago Nieto Orozco; Ex. 2: Notice to Appear, Form I-862.*

2. Petitioner lived in Sahuayo, Michoacán, with his mother, Maria Eugenia Orozco Manzo (A# 201-427-314), and his two younger siblings. *Ex. 1*.

3. Hooded men of the Los de Jalisco cartel extorted Petitioner's mother for a "quota" and threatened that if she did not comply she would face the same fate as

"those who had not complied", implying that they would kill her. *Ex. 1.*

4. Fearing for her own safety and that of her three minor children, Petitioner's mother fled Mexico with them on November 14, 2018. *Id.*

5. On December 22, 2018, Petitioner's mother presented herself and her three children to immigration authorities at the San Ysidro Port of Entry to seek asylum. *Exs. 1, 2.*

6. Omar was ten years old. *Ex. 2.*

7. DHS held the family in immigration custody as a family unit. *Ex. 1.*

8. On December 24, 2018, DHS issued Petitioner a Notice to Appear ("NTA") placing him in removal proceedings under INA § 240, designating him an "arriving alien," and charging him with inadmissibility under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Ex. 2.* Because Omar was ten years old, his mother signed the certificate of service. *Id.*

9. On December 26, 2018, DHS released Petitioner from physical custody by issuing an ICE Form I-830, Notice to EOIR: Alien Address, which states that Petitioner was "Released from ICE custody on the following condition(s)," and identifies that condition as "Other — Paroled pursuant to 8 CFR 212.5." *Ex. 3: Form I-830 (Dec. 26, 2018).*

10. That same day, ICE served Petitioner with a Notice of Release and Proof of Service designating his release as "Parole with Reporting Requirements" and directing him to report in person to the "Non-Detained Office/ATD Office" at 300 North Los Angeles Street, Room 2204, Los Angeles, on January 7, 2019 at 10:00 a.m. *Ex. 4: Notice of Release and Proof of Service*. The notice bears a "JUVENILE"

stamp, and Petitioner's mother signed it on his behalf. *Id.* ICE issued corresponding release documents to Petitioner's mother. *Ex. 5: Release Documents for Maria Eugenia Orozco Manzo.*

11. Neither the Form I-830 nor the Notice of Release states an expiration date or a fixed period for Petitioner's parole. *Exs. 3, 4.*

12. Under 8 C.F.R. § 212.5(b), parole from custody is conditioned on the noncitizen presenting neither a security risk nor a risk of absconding. DHS's decision to parole Petitioner therefore reflected a determination that he presented neither risk at the time of release. That determination supports the conclusion that his release under the conditions imposed by DHS, rather than continued physical detention, was sufficient to address the Government's concerns regarding security and his appearance at future proceedings. *See* 8 C.F.R. § 212.5(b).

13. As directed, Petitioner's mother appeared with her three children at the ATD office on January 7, 2019. *Ex. 1.* ICE placed an ankle monitor on Petitioner's mother. It imposed no additional condition on Petitioner. *Id.*

14. Approximately three months later, ICE removed the ankle monitor and instructed Petitioner's mother that neither she nor the children were required to continue reporting. *Ex. 1.* From that point forward, no reporting, Alternatives to Detention ("ATD"), or monitoring requirement were imposed on Petitioner or his mother. *Id.*

15. Petitioner has resided continuously in the interior of the United States since December 26, 2018 — first in Wilmington, then in Sylmar, and since 2019 in San Fernando, California. *Ex. 6.* He turned eighteen on May 13, 2026. He has always

lived in his mother's care. *Ex. 1.*

16. Omar attended elementary and middle school in the Los Angeles area. *Ex. 6.* He currently attends Assurance Learning Academy, a charter high school in San Fernando, California. *Id.*

17. His case was consolidated with his mother and his siblings. Their removal proceedings have been held on November 22, 2019, February 10, 2020, and January 20, 2023. *Ex. 1*. Their next hearing is set for July 28, 2027. *Ex. 1*.

18. On December 8, 2022, when Omar was fourteen years old, a Form I-589, Application for Asylum and for Withholding of Removal, was filed on his behalf with the immigration court. *Ex. 6.* That application remains pending.

19. Before September 24, 2026, Petitioner had never been charged with any offense, in the United States or anywhere else. *Exs. 1, 7.*

20. On September 24, 2026, Omar was out with a friend in Sylmar, California, when he encountered officers of the Los Angeles Police Department ("LAPD"), who took him into custody. *Ex. 1*. No criminal charge has been filed against him. A name search of the records of the Superior Court of California, County of Los Angeles, covering May 13, 2006 through October 15, 2026 , a period spanning the entirety of Petitioner's life, reflects no criminal case against him. *Ex. 7: Superior Court Name Search.*

21. LAPD released Omar the following morning. *Ex. 1.* As he exited the police station, ICE officers took him into custody. *Id.; Ex. 8: Form I-830E, Notice of EOIR: Alien Address.*

22. At no time before his re-detention was Petitioner told that his parole would

be terminated, that his release would be revoked, or that he was accused of violating any condition of his release. *Ex. 1*.

23. Prior to re-detaining Petitioner, Respondents gave him no meaningful opportunity to contest the revocation of his release or to demonstrate that he remained neither a danger nor a flight risk.

24. Upon information and belief, Respondents made no determination that the purposes of Petitioner's parole had been served, as 8 U.S.C. § 1182(d)(5)(A) requires before a paroled noncitizen may be returned to custody. Petitioner's removal proceedings remain pending, and his asylum application remains pending.

25. Upon information and belief, Respondents did not consider Petitioner's existing release, under which DHS had paroled him and which had functioned for nearly eight years. They also did not explain why they rejected that release arrangement or any less restrictive alternative.

26. Upon information and belief, Respondents have identified no process of any kind in place to ensure that individuals in Petitioner's position, persons previously released by DHS and living in the community under Government-approved conditions, are not taken into physical custody improperly.

27. On October 1, 2026, ICE notified the immigration court that Petitioner had been detained and transferred on September 25, 2026 to the Adelanto ICE Processing Center. *Ex. 8*. The form does not state any reason for his re-detention. *Id.*

28. He has remained in ICE custody continuously since September 25, 2026 and is presently detained at the Adelanto ICE Processing Center. *Ex. 9: ICE Detainee Locator*.

29. Omar was not apprehended between ports of entry. He was ten years old when his mother presented him and his siblings at the San Ysidro Port of Entry and affirmatively expressed a fear of return to Mexico. *Exs. 1, 2.*

30. He has received no hearing before any neutral decisionmaker at which Respondents were required to justify revoking his prior release.

## LEGAL FRAMEWORK

31. Federal habeas review is available to test the legality of immigration detention. Section 2241 authorizes relief where a person is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

32. The Due Process Clause of the Fifth Amendment protects both citizens and noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (Fifth Amendment protections apply to noncitizens "whether their presence here is lawful, unlawful, temporary, or permanent"). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").

33. Petitioner does not seek review of a final removal order or even a bond order. He challenges only the legality of his detention and the procedures used to revoke his release and maintain custody. The jurisdictional limits applicable to

review of removal orders therefore do not bar this action.

34. Petitioner was released from physical custody into the community after the Government determined that release was appropriate. Respondents could not then revoke that liberty and re-detain him without constitutionally adequate process.

35. Respondents will likely take the position that *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), places him under INA § 235(b), 8 U.S.C. § 1225(b), and renders him ineligible for ordinary bond before the IJ. That position does not answer the constitutional question presented here. *Q. Li* addressed whether an applicant for admission detained under § 235(b), released pursuant to parole, and later returned to custody is eligible for bond under INA § 236(a), 8 U.S.C. § 1226(a). *Q. Li* did not hold that DHS may revoke release and re-detain a person who has been living in the community under Government-approved conditions without constitutionally adequate notice, individualized reasons, and a neutral hearing — nor could it, because the Board does not adjudicate constitutional challenges to the statutes it administers.

36. Likewise, *Jennings v. Rodriguez*, 583 U.S. 281 (2018), does not resolve this case. *Jennings* held that §§ 1225(b), 1226(a), and 1226(c) do not themselves require periodic bond hearings. The Court expressly declined to reach the constitutional questions and remanded them. *Id.* at 313–14. *Jennings* says nothing about whether the Government may extinguish an existing, Government-conferred liberty status without notice or a hearing.

37. This Petition therefore does not concern the ordinary procedures applicable to an initial custody determination. It concerns Respondents' revocation

of Petitioner's existing release status and his re-detention without notice, a neutral hearing, or a constitutionally adequate opportunity to contest whether materially changed circumstances justified detention.

38. Evaluating the contours of Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

39. Conditional release from physical restraint may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Once an individual is granted conditional release, he may have a protected liberty interest in remaining in the community — and an attendant right to procedural protections before that liberty is revoked. *See id.* (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). In deciding whether a specific form of conditional release gives rise to a protected liberty interest, courts compare the form of conditional release at issue with the parolee's liberty interest as described in *Morrissey v. Brewer*. *See González-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010).

40. In *Morrissey*, the Supreme Court explained that conditional liberty enables a person "to do a wide range of things" available to individuals who have never been convicted of any crime — to live at home, work, be with his friends and family, and

"form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Though the Government "properly subjects him to many restrictions not applicable to other citizens," including monitoring and requiring authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* Moreover, he "relie[s] on at least an implicit promise" that his liberty will be revoked only if he fails to live up to its conditions. *Id.* Revocation "inflicts a grievous loss," and as such he possesses a protected interest in his continued liberty. *Id.* at 481–84.

41. Omar did each of those things. He grew up in his mother's home from the age of ten, lived with his younger siblings, attended school from elementary school and is currently enrolled in high school, he remained in his immigration proceedings, pursued his asylum claim, and formed the enduring attachments of normal life — as a child and as a teenager that he still is.

42. Multiple district courts have applied these principles to hold that a noncitizen released from immigration custody has a protected liberty interest in remaining out of custody absent constitutionally sufficient justification for re-detention.

43. In *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025), the court held that even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a

hearing before an IJ prior to re-detention."); *Jorge M.F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

44. Civil immigration detention is constitutionally permissible only to prevent flight or to protect against danger to the community. *See Zadvydas*, 533 U.S. at 690. DHS's decision to parole Petitioner in December 2018 reflected a determination that he presented neither a security risk nor a risk of absconding, supporting the inference that his release was consistent with the Government's interests in protecting the public and securing his appearance. *See* 8 C.F.R. § 212.5(b); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1167 (S.D. Cal. 2025) ("In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'"); *Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (a petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk"). Once released, Petitioner had a liberty interest "in remaining at liberty unless [he] no longer meets those criteria." *Espinoza v. Kaiser*, No. 1:25-cv-01101 JLT SKO, 2025 WL 2581185, at *13 (E.D. Cal. Sept. 5, 2025) (cleaned up).

45. Other courts have held similarly. *Doe v. Becerra*, 787 F. Supp. 3d 1083,

1093–95 (E.D. Cal. 2025); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

46. Omar was presented to DHS at a port of entry as a ten-year-old child. DHS then paroled him. Because parole under 8 C.F.R. § 212.5(b) was conditioned on Petitioner presenting neither a security risk nor a risk of absconding, his December 2018 release supports the inference that DHS considered continued physical detention unnecessary to address concerns regarding danger or flight. His release from DHS custody constituted an "implied promise" that his liberty would not be revoked unless he "failed to live up to the conditions of [his] release." *Morrissey*, 408 U.S. at 482. DHS reinforced that promise when, months after his release, it lifted the reporting requirement altogether from his mother and he children. *Ex. 1*. Omar justifiably relied on that promise in growing up in this country, in attending school, and in pursuing his asylum claim through nearly eight years of proceedings.

47. To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court should apply the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (assuming, without deciding, that *Mathews* applies in the immigration detention context, and collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

a. The private interest that will be affected by the official action;

b. The risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

c. The Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

48. Each *Mathews* factor supports Petitioner's right to due process before or promptly after re-detention.

**PARTIES**

49. Petitioner, Omar Santiago Nieto Orozco, is detained by immigration authorities and remains in custody at the Adelanto ICE Processing Center, or another facility under the control and direction of Respondents.

50. Respondent Todd Blanche is the Attorney General of the United States. He has authority to supervise the implementation and enforcement of the INA, including immigration adjudication functions carried out through the Executive Office for Immigration Review. He is sued in his official capacity.

51. Respondent Markwayne Mullin is the Secretary of Homeland Security. He is responsible for immigration enforcement functions vested in the Department of Homeland Security. He is sued in his official capacity.

52. Respondent Todd Lyons is the Acting Director of United States Immigration and Customs Enforcement. He is responsible for ICE enforcement and

detention operations. He is sued in his official capacity.

53. Respondent Ernesto Santacruz, Jr., is the Acting Field Office Director, Los Angeles Field Office, United States Immigration and Customs Enforcement, Enforcement and Removal Operations. He is responsible for detention and removal operations within the Los Angeles Field Office area of responsibility. He is sued in his official capacity.

54. Respondent Fereti Semaia is the Warden of the Adelanto ICE Processing Center. He is the immediate custodian of Petitioner and bears responsibility for detaining him. He is sued in his official capacity.

55. Respondent Sirce Owen is the Acting Director of the Executive Office for Immigration Review ("EOIR"), a component agency of the Department of Justice responsible for conducting removal and bond hearings of noncitizens. EOIR is comprised of a lower adjudicatory body administered by immigration judges and an appellate body known as the Board of Immigration Appeals ("BIA"). Immigration judges issue bond redetermination decisions, which are then subject to appeal to the BIA. She is sued in her official capacity.

## JURISDICTION AND VENUE

56. Petitioner is in the physical custody of Respondents. Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, California, which is within the Central District of California. A substantial part of the events or omissions giving rise to Petitioner's claims occurred in this District, including his release to and residence in San Fernando, California, and his re-detention by ICE upon his release from LAPD custody in Los Angeles County. *Exs. 1, 6.*

57. Adelanto, California, is also within the geographical jurisdiction of this Court. Several of the Respondents reside and work in their official capacity in this District. 28 U.S.C. § 1391(e). Furthermore, it is a convenient forum for both the Respondents and Petitioner. *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 493–94 (1973).

58. This Court has jurisdiction under 28 U.S.C. § 2241, 28 U.S.C. § 1331, and Article I, Section 9, Clause 2 of the United States Constitution.

59. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the All Writs Act, 28 U.S.C. § 1651, to protect Mr. Nieto Orozco's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution and under applicable federal law.

60. This Court also has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Fifth Amendment, the Immigration and Nationality Act, and the Administrative Procedure Act.

61. The United States has waived sovereign immunity as to Petitioner's claims for non-monetary relief. 5 U.S.C. § 702.

62. Neither 8 U.S.C. § 1252(g) nor § 1252(a)(2)(B)(ii) bars review of the claims presented here. Petitioner challenges the legality of his re-detention and the purported termination of his existing parole, not the decision to commence proceedings, adjudicate his removal case, or execute a removal order. Section 1252(g) applies only to those three discrete actions. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Although 8 U.S.C. §

1182(d)(5)(A) confers discretion over parole, Petitioner does not ask this Court to substitute its judgment for DHS's discretionary assessment. He challenges whether Respondents satisfied the legal predicates and mandatory notice requirements governing termination under § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e), and whether his resulting custody complies with due process. Those challenges concern the lawful scope and exercise of agency authority, rather than the merits of a discretionary parole determination. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1147 (D. Or. 2025)( (rejecting application of § 1252(a)(2)(B)(ii) where the challenged parole termination failed to satisfy governing statutory and regulatory requirements).

## REQUIREMENTS OF 28 U.S.C. § 2243

63. The Court must grant the petition for writ of habeas corpus or issue an order to show cause "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require Respondents to file a return within three days unless, for good cause, additional time not exceeding twenty days is allowed. 28 U.S.C. § 2243.

64. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

## LEGAL ARGUMENT

65. This case concerns the unlawful re-detention of a Petitioner who was released from immigration custody with his mother on parole as a ten-year-old child in December 2018 and was allowed to live in the community for nearly eight years. His mother was only required to wear an ankle monitor for three months and then told she need only comply with appearing in immigration court. *Exs. 1, 3, 4.*

66. Petitioner was not arrested after absconding. He has lived with his family the entire time, has remained in his removal proceedings, and has a pending asylum application and had a next hearing set for July 28, 2027. *Ex. 10: Hearing Notice for Maria Eugenia Orozco Manzo, et al.* Respondents re-detained him as he walked out of a police station after an overnight hold that produced no criminal charge, without prior written notice, without a neutral pre-deprivation hearing, and without giving him a meaningful opportunity to contest the factual basis for revoking his release. *Ex. 1.*

67. Respondents may rely on *Matter of Q. Li* and § 1225(b) to assert mandatory detention, a position reinforced by DHS's designation of Petitioner as an "arriving alien." *Ex. 2.*

68. Because Petitioner's § 2241 petition challenges the present statutory authority for his detention under 8 U.S.C. § 1225(b), rather than seeking review of a final order of removal, 8 U.S.C. § 1252(d)(1) does not itself govern this claim. Any exhaustion requirement is therefore prudential, not jurisdictional. *Laing v. Ashcroft*, 370 F.3d 994, 997–98 (9th Cir. 2004); *Singh v. Holder*, 638 F.3d 1196, 1203 n.5 (9th Cir. 2011). The Court retains discretion to require further exhaustion after

considering whether agency review is necessary to apply agency expertise or develop the record, whether excusing exhaustion would encourage bypass of the administrative scheme, and whether further administrative review could correct the asserted legal error or eliminate the need for judicial review. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

69. The Due Process Clause protects noncitizens physically present in the United States, and the Government may not revoke an existing liberty status and impose civil detention without constitutionally adequate procedures. Having previously been released from immigration custody, Petitioner has a protected liberty interest in remaining free from detention. *See Garcia v. Noem*, No. 25cv3759-LL-BLM (S.D. Cal. Jan. 26, 2026) (recognizing a protected liberty interest following release on parole); *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017) (recognizing that actual freedom from physical confinement can carry due process protections even when that freedom remains lawfully revocable). The Government's discretion over the initial release decision does not eliminate the protected liberty interest that arises after release. *Pinchi v. Noem, 792 F. Supp*. 3d 1025, 1032 (N.D. Cal. 2025). Rather, release creates a reasonable expectation of continued liberty subject to the conditions imposed, and the Government cannot withdraw that established liberty without constitutionally adequate process. See id.; *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

70. ICE's release constituted at least an implicit promise that Omar would remain in the community so long as he complied with the conditions of release. A consistent and persuasive district-court line, including decisions within the Ninth

Circuit, recognizes that a noncitizen released from immigration custody has a protected liberty interest in remaining out of custody unless and until the Government provides constitutionally adequate process to justify re-detention. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK (E.D. Cal. Aug. 28, 2025); *J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO (E.D. Cal. Oct. 16, 2025). Respondents violated that liberty interest when they revoked Petitioner's prior release and re-detained him without constitutionally adequate process.

71. That interest is particularly substantial here. Omar was released in when he was 10 years old, he grew up in the community attending our school systems, partaking in childhood activities. His nearly eight years of integration in the community gave concrete substance to his interest in continued liberty, distinguishing his circumstances from those of a noncitizen seeking release from initial detention. *Ex. 1.* Yet before ICE detained him again, Petitioner received neither notice that his release would be revoked nor an opportunity to contest detention or present evidence concerning danger and his likelihood of appearing. Under *Garcia* and *Pinchi*, those circumstances support Petitioner's claim that Respondents withdrew his established liberty without the individualized procedural protections required by due process.

72. The constitutional question is whether materially changed circumstances justified revoking Petitioner's existing release and whether Respondents afforded

constitutionally adequate process in doing so. The timing and adequacy of that process must account for Petitioner's established liberty interest, the risk of erroneous deprivation, and the Government's interests. *Saravia* provides a useful analogy: in affirming a preliminary injunction concerning unaccompanied minors previously released by ORR to approved sponsors under the TVPRA, the Ninth Circuit recognized the significance of ORR's prior determinations that the *minors* were neither dangerous nor flight risks and upheld a requirement that the Government justify renewed detention based on changed circumstances at a hearing within seven days of arrest, absent extraordinary circumstances. *Saravia ex rel. A.H. v. Sessions*, 905 F.3d 1137, 1143 (9th Cir. 2018). Although Petitioner's DHS parole differs from the ORR placements at issue in *Saravia*, his release as a child and subsequent years at liberty similarly support requiring a meaningful opportunity to contest the justification for renewed detention. *Saravia* supports that individualized inquiry, not a categorical rule requiring a pre-arrest hearing for every adult immigration parolee.

73. Each of the three *Mathews* factors supports Petitioner's constitutional right to due process before he was re-detained.

74. The first *Mathews* factor heavily favors Petitioner. His private interest is freedom from physical custody after nearly eight years living openly in the community under Government-approved release conditions. Petitioner spent those years, from age ten to age eighteen, growing up in this country. He lived with his mother and younger siblings in San Fernando. *Exs. 1, 6*. Re-detention deprived him of his liberty, of his family, and of his ability to participate meaningfully in his

asylum and habeas proceedings. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (finding a substantial liberty interest where the petitioner had lived in the community for eighteen months, worked, lived with family, and developed community ties). Omar's ties are more than five times as long.

75. The risk of erroneous deprivation is high. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Where a petitioner receives no pre-deprivation custody hearing or other process in connection with the revocation of his parole, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up). That risk is magnified here because Respondents have identified no violation of any condition of release, and the only intervening event, an overnight police hold, produced no criminal charge. *Ex. 7.* An arrest is an *unproven* accusation, not a finding. Without a hearing, nothing tests whether the underlying conduct occurred, whether it bears on flight or danger, or whether the conditions under which Petitioner lived for nearly eight years remain adequate. The risk is magnified further where the Government revokes liberty at the door of a police station, when the noncitizen, a young man who has just spent the night in police custody, has no practical opportunity to gather evidence, consult counsel, or be heard before the deprivation is complete. The only procedure that could have reduced that risk is the very procedure Respondents withheld.

76. The Government's burden is minimal, and Respondents can identify no countervailing interest that supports providing process only after Petitioner's parole

has been revoked. Due process "usually" requires a hearing before the Government deprives a person of liberty. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Exceptions to that general rule are appropriate only where quick action is necessary or where it is impracticable or impossible to provide pre-deprivation process. *Id.* at 128.

77. Neither exception applies here. There was no exigency of any kind. Petitioner was already in LAPD custody overnight. Respondents were positioned to take him into custody at the moment of his release, which confirms that they knew in advance where he would be and when. They had the night to serve written notice, to state the asserted basis for termination, and to arrange a hearing. Pre-deprivation process was not merely practicable; Respondents had every opportunity to provide it and simply chose not to. The record identifies no post-release written termination notice. Respondents knew his residential address, held his A-file, and had his pending asylum application. Petitioner had lived at known addresses in Los Angeles County for nearly eight years and remained in his removal proceedings throughout. Immigration custody hearings are routine. As one court put it, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." *Ortega*, 415 F. Supp. 3d at 970; *see also Morrissey*, 408 U.S. at 483.

78. Respondents may contend that Petitioner's September 24, 2026 encounter with LAPD is itself a materially changed circumstance that justified re-detention. Whatever weight Respondents would assign it, that contention is precisely what a neutral hearing exists to test; it does not excuse the absence of one. The procedural

protections recognized in *Morrissey* exist to test accusations before liberty is revoked. *See Morrissey*, 408 U.S. at 481–84. Here, no criminal charge has been filed. *Ex. 7*. Respondents have identified no finding, by any decisionmaker, that Petitioner engaged in the conduct for which he was briefly held, or that such conduct bears on whether he will appear for his hearings or poses a danger to the community.

79. Nor can Respondents justify re-detention on the theory that Petitioner's parole lapsed when he turned eighteen. The release documents state no expiration date and do not tie parole to his minority. *Exs. 3, 4*. Even if Respondents contend that Petitioner was paroled as a juvenile under 8 C.F.R. § 212.5(b)(3), neither 8 U.S.C. § 1182(d)(5)(A) nor 8 C.F.R. § 212.5(e) provides that parole terminates automatically on a parolee's eighteenth birthday. Outside the automatic-termination circumstances, termination requires written notice and an authorized official's determination. 8 C.F.R. § 212.5(e)(1), (e)(2)(i). Petitioner turned eighteen on May 13, 2026. Respondents took no action then. They acted more than four months later, only after a police encounter that produced no charge. And whatever purpose Respondents attribute to the parole, the removal proceedings in which DHS charged Petitioner, and the asylum application filed in those proceedings, remain pending.

80. A pre-deprivation hearing would have afforded Petitioner notice of the asserted grounds for re-detention and a meaningful opportunity to contest them before his liberty was curtailed. It also would have avoided the immediate disruption to the family, housing, schooling, and community arrangements he developed while lawfully at liberty. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1031–37 (N.D. Cal. 2025); *Espinoza v. Kaiser*, No. 1:25-cv-01101-JLT-SKO (E.D. Cal. Sept. 5, 2025)

(amended order granting temporary restraining order).

81. In sum, Petitioner has a substantial interest in remaining free from confinement after nearly eight years living in the community following his childhood release. The absence of advance notice and a meaningful opportunity to contest renewed detention created a significant risk that Respondents deprived him of that liberty unnecessarily. Respondents' interest in enforcing the immigration laws does not establish a corresponding interest in dispensing with individualized procedural safeguards. Even if Respondents rely on Petitioner's encounter with local police as a changed circumstance, that allegation requires meaningful evaluation rather than acceptance as a sufficient basis for withdrawing his established liberty without process. On these facts, Respondents' re-detention of Petitioner without constitutionally adequate pre-deprivation procedures violated the Fifth Amendment. *See Sanchez v. LaRose*, No. 25-cv-2396-JES-MMP (S.D. Cal. Sept. 26, 2025) (granting habeas relief where parole revocation lacked an individualized justification and constitutionally adequate procedural protections); *Garcia v. Noem*, No. 25-cv-3759-LL-BLM (S.D. Cal. Jan. 26, 2026) (holding that re-detention following parole revocation without notice or a pre-deprivation hearing violated due process and ordering immediate release on the preexisting parole conditions).

82. Because Respondents seek to revoke the liberty previously afforded Petitioner, Respondents should bear the burden of establishing that re-detention is justified. That burden should be clear and convincing evidence because physical detention is a severe deprivation of liberty, and Petitioner's prior release reflected the Government's determination that he was neither a danger nor a flight risk. *See*

*Erdem v. Marin*, No. ED CV 26-2866-AB(E) (C.D. Cal. June 30, 2026); *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

83. Although *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), held that due process did not require the Government to bear the burden at a second bond hearing based solely on prolonged detention under § 1226(a), *Rodriguez Diaz* did not involve the distinct circumstance presented here: the revocation of an existing release.

84. District courts in this Circuit have distinguished *Rodriguez Diaz* in re-detention cases, holding that due process may require heightened procedural safeguards when ICE revokes a person's existing release from physical custody and re-detains him without prior notice, individualized findings, or a neutral hearing. *See Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025). The Government's prior release decision necessarily reflected a determination that the person was not a flight risk or danger.

85. Habeas corpus provides a remedy for unlawful executive detention, and release is its traditional remedy. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Consistent with that principle, the Ninth Circuit has explained that habeas relief should restore the petitioner to the position he would have occupied absent the constitutional violation. *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013). Applied here, that restorative principle supports immediate release on the conditions governing Petitioner's liberty before his unlawful re-detention. Petitioner does not seek an initial discretionary grant of release; he seeks restoration of the liberty

Respondents withdrew without constitutionally adequate procedures. Continued confinement pending a new custody hearing would leave him deprived of that liberty rather than restore the position he occupied before the violation.

86. Immigration-specific authority supports that remedy. In *Garcia v. Noem*, No. 25-cv-3759-LL-BLM (S.D. Cal. Jan. 26, 2026), the Government conceded that the petitioner was entitled to a bond hearing, but the court determined that revocation of his prior parole without notice or a pre-deprivation hearing violated due process and ordered immediate release subject only to his preexisting parole conditions. Petitioner seeks the same restorative relief. His requested release would not foreclose lawful future detention; it would require Respondents to restore his prior release and employ constitutionally adequate procedures before withdrawing that established liberty again. A new custody hearing should not be substituted for restoration merely because it could determine whether detention might be justified prospectively.

87. Petitioner seeks to be returned to the status quo: release on parole under 8 C.F.R. § 212.5 on the terms in effect on September 23, 2026, under which DHS required no telephonic or in-person reporting, ATD enrollment, or electronic monitoring. *Exs. 1, 3*. Should Respondents argue that Petitioner's sole entitlement is to a bond hearing, that argument has been considered and rejected. *See Jasbir*, 2026 WL 353354, at *4. A bond hearing is not the remedy for an unconstitutional revocation; it is the very process that courts have held cannot cure one. *See Hasratyan v. Bondi*, No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Charan S. v. Warden, CA City*, No. 1:26-cv-3017-TLN-JDP,

2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process."); *see also Riveros-Sanchez v. City of Easton*, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

88. The adopted reasoning in *Melkonyan* provides additional persuasive support for immediate release. There, DHS released a noncitizen who had presented at a port of entry and later re-detained him without meaningful notice or an opportunity to contest revocation of his release. Applying Mathews, the court found a protected liberty interest in continued release, strengthened by the time spent living in the community and the connections developed during that period. It further found a substantial risk of erroneous detention where the Government supplied no evidence that the circumstances supporting release had materially changed, while its interest in withholding notice and a hearing was minimal. *Melkonyan v. Blanche*, No. 5:26-cv-04480-JFW-MAR, [Dkt. 9] at 2–9 (C.D. Cal. Aug. 26, 2026), adopted, [Dkt. 10] (C.D. Cal. Aug. 26, 2026). Although Respondents did not oppose relief in *Melkonyan*, the court independently evaluated the procedural due process claim. Here, Petitioner's release as a child followed by nearly eight years of life in the community supplies a compelling basis for the same individualized inquiry. His claim concerns the withdrawal of an established liberty, not an initial request for discretionary release.

89. Prospective protection is likewise necessary to prevent repetition of the challenged deprivation. In *Pinchi*, after the petitioner had been released pursuant to a temporary restraining order, the court entered a preliminary injunction prohibiting renewed detention without a pre-detention hearing before a neutral immigration judge. It required the Government to establish by clear and convincing evidence that danger or flight risk warranted confinement and that conditions other than detention would not suffice. *See Pinchi*, 792 F. Supp. 3d 1025. Petitioner seeks comparable, individualized protection: restoration of his prior release and notice and a meaningful hearing before renewed detention, with the Government required to justify the proposed restraint and address less restrictive alternatives. That relief does not establish immunity from lawful detention; it prevents Respondents from withdrawing Petitioner's established liberty without the process his circumstances require.

90. In *Alvarez Gallardo v. Att'y Gen. of the U.S.*, No. 3:26-cv-02273-DMS-JLB ((S.D. Cal. Apr. 28, 2026), provides a particularly close analogy to Petitioner's release during childhood and subsequent re-detention as an adult. There, the petitioner entered the United States at fourteen, was detained by ORR, and was released in February 2020. Immigration authorities re-detained him in March 2026 without notice, an explanation, or an opportunity to contest renewed detention. Applying *Mathews*, the court found that his prior release established a liberty interest in remaining free and that the absence of evidence of changed circumstances diminished the Government's interest in renewed detention. The court ordered release within twenty-four hours, rather than merely a post-detention hearing, and

prohibited renewed detention during pending removal proceedings, until issuance of a final removal order, without a prior hearing at which the Government demonstrated changed circumstances concerning danger or flight risk. *Alvarez Gallardo v. Att'y Gen. of the U.S.*, No. 3:26-cv-02273-DMS-JLB, [Dkt. 7] at 1–4 (S.D. Cal. Apr. 28, 2026).

91. Petitioner's initial release was pursuant to DHS's parole authority rather than the ORR placement process involved in *Alvarez Gallardo*, but that distinction does not diminish the relevance of its constitutional analysis: release during childhood, followed by years of established liberty, remains significant when the Government later seeks to impose physical detention in adulthood. Petitioner does not rely on *Alvarez Gallardo* to establish a categorical entitlement to release for every former juvenile. Rather, its individualized analysis supports immediate release here because Respondents have identified no materially changed circumstances justifying the revocation of his existing release and have provided no constitutionally adequate opportunity to contest renewed detention. *See Id. at 2–3*.

92. *A.N.P.S.* likewise demonstrates why *Saravia's* hearing remedy does not foreclose immediate release when the Government identifies no intervening conduct undermining its prior release determination. Applying Mathews, the court granted habeas relief to a minor whom ORR had released to an approved sponsor approximately three years before ICE re-arrested him without an explanation or a showing of changed circumstances. *A.N.P.S. v. Salaz*ar, No. 1:25-cv-14778, [Dkt. 20] at 2, 9–12 (N.D. Ill. Dec. 22, 2025). In selecting the remedy, the court expressly distinguished *Saravia*, where allegations of gang involvement required adjudication,

because no conduct by the petitioner or his sponsor called the prior suitability determinations into question. The Court accordingly ordered immediate release to the previously approved sponsor rather than another hearing. *Id. at 17–18*. Although *A.N.P.S.* involved ORR sponsorship under the HSA and TVPRA, its remedial reasoning is persuasive here: where Respondents identify no new conduct warranting detention, restoring the liberty unlawfully withdrawn is an appropriate remedy rather than requiring Petitioner to remain detained while the Government receives another opportunity to justify its unexplained reversal.

93. Therefore, Petitioner seeks a writ requiring his immediate release on the conditions of parole in effect before his re-detention.

94. Petitioner challenges under the APA ICE's completed decision to terminate, or treat as terminated, his existing release, with renewed detention as its consequence. He pleads this claim in the alternative, to the extent habeas and his constitutional claims do not provide an adequate judicial remedy for the challenged termination action. Petitioner does not ask the Court to reconsider the discretionary merits of an ordinary custody determination. Rather, he seeks review of whether ICE complied with the legal prerequisites and mandatory procedures governing termination of his existing release. Because Respondents treat Petitioner as an arriving alien detained under 8 U.S.C. § 1225(b), the immigration-court custody process does not provide a means to review or vacate ICE's completed termination action. That administrative limitation does not alone establish APA reviewability; Petitioner seeks APA review only to the extent the termination constitutes final agency action for which there is no other adequate remedy in a court. 5 U.S.C. §

704.

## CLAIMS FOR RELIEF

### Count One

### Violation of the Fifth Amendment Procedural Due Process Clause: Unlawful Revocation of Prior Release Without Adequate Process

95. Petitioner incorporates the preceding paragraphs as though fully set forth herein.

96. Petitioner possessed a protected liberty interest in remaining free from physical custody after ICE released him from custody as "Paroled pursuant to 8 CFR 212.5" on December 26, 2018 and permitted him to live in the community for nearly eight years. *Exs. 3, 4.*

97. Respondents deprived Petitioner of that liberty interest when they took him into custody on September 25, 2026, as he was released from LAPD custody.

98. Respondents did so without the written notice required by 8 C.F.R. § 212.5(e)(2)(i), without advance notice of any kind that his release would be revoked, without a neutral pre-deprivation hearing, and without a meaningful opportunity to contest the factual basis for re-detention.

99. Respondents did not identify materially changed circumstances showing that Petitioner had become a danger or flight risk since DHS previously released him. A police encounter that resulted in no criminal charge is not a determination by anyone that Petitioner is a danger or a flight risk.

100. Respondents' failure to provide constitutionally adequate process created a substantial risk of erroneous deprivation. The risk is heightened because Petitioner had already been released by DHS; had lived for nearly eight years at addresses reported to the immigration court in his own asylum application; had remained in his removal proceedings, with a next hearing set for July 28, 2027; had a pending application for asylum, withholding of removal, and Convention Against Torture protection; and had been relieved of reporting by DHS itself.

101. Under *Mathews v. Eldridge*, Petitioner's private liberty interest is weighty; the risk of erroneous deprivation without notice and a hearing is high; the value of a neutral hearing is substantial; and Respondents' burden in providing such

process is minimal because custody hearings are routine in immigration proceedings.

102. Respondents therefore violated the Due Process Clause of the Fifth Amendment.

**Count Two**
**Violation of the Fifth Amendment Procedural Due Process Clause: Continued Detention Without Any Constitutionally Adequate Hearing**

103. Petitioner incorporates the preceding paragraphs as though fully set forth herein.

104. Since September 25, 2026, Petitioner has been held in physical custody without any hearing before a neutral decisionmaker at which the Government has been required to justify revoking his prior release.

105. A constitutionally adequate re-detention hearing after prior release must address whether the Government has justified revoking the existing liberty status, not merely whether continued custody could be justified in an ordinary first-instance custody redetermination or under a mandatory-detention theory.

106. Because Petitioner had already been released by DHS, Respondents bear the burden to prove materially changed circumstances justifying re-detention.

107. Due process requires Respondents to prove, by clear and convincing evidence, that Petitioner presently poses a danger to the community or a risk of flight such that physical detention is necessary and no less restrictive alternative, including the release conditions already in place, can reasonably mitigate those concerns. *See Erdem v. Marin*, No. ED CV 26-2866-AB(E) (C.D. Cal. June 30, 2026); *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025).

108. No immigration-court proceeding has cured the unlawful re-detention. DHS charged Petitioner as an arriving alien, *Ex. 2,* and, upon information and belief, Respondents treat him as detained under § 1225(b), leaving no forum in which an immigration judge would adjudicate whether Respondents lawfully revoked Petitioner's prior parole, whether ICE gave adequate notice, whether Petitioner violated any condition of release, whether materially changed circumstances existed, or whether less restrictive alternatives remained sufficient. A post-detention hearing

is "no substitute for the pre-detention process" Petitioner was owed, *Hasratyan v. Bondi*, No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *accord Charan S. v. Warden, CA City*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026); *Mumaev v. Semaia*, No. 5:25-cv-03409-FLA (MAR), 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026). And a custody proceeding unavailable at the threshold is not even that.

109. Petitioner's release from immigration custody created a protected liberty interest in remaining at liberty subject to the conditions of release. The Government could not revoke that existing liberty interest through re-detention without constitutionally adequate process. *See Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK (E.D. Cal. Aug. 28, 2025).

110. Respondents' continued detention of Petitioner without a constitutionally adequate revocation or re-detention hearing violates the Due Process Clause.

**Count Three**
**Violation of the Fifth Amendment Substantive Due Process Clause: Arbitrary Civil Detention**

111. Petitioner incorporates by reference the preceding paragraphs as though fully set forth herein.

112. Civil immigration detention is constitutionally permissible only when it remains reasonably related to a legitimate, nonpunitive regulatory purpose. The Government's asserted interests in civil immigration detention are ensuring appearance at proceedings and protecting the community from danger; detention that is not rationally related to those interests, or that is excessive in relation to them, is punitive and violates substantive due process. *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001).

113. Respondents' September 25, 2026 re-detention of Petitioner, and their continued detention of him, bear no reasonable relationship to preventing flight or protecting the community. Before re-detention, Petitioner lived in the community for nearly eight years under conditions DHS set and then relaxed, remained in his removal proceedings, and pursued his asylum claim. Respondents re-detained him at the moment LAPD released him from an overnight hold that produced no criminal charge. The absence of any charge, the absence of any alleged emergency, and the absence of any individualized determination identifying a material change in circumstances undermine any claim that immediate physical detention was

necessary to prevent flight or danger.

114. Respondents previously determined that Petitioner could remain at liberty subject to conditions of release. Nothing in the circumstances alleged above supports a conclusion that those conditions had become inadequate, that Petitioner presents a present danger to the community, or that Petitioner presents a present risk of flight that cannot be addressed through continued release or other less restrictive conditions. Continued physical detention is therefore excessive in relation to any legitimate regulatory objective.

115. The absence of notice, a meaningful opportunity to contest the asserted basis for re-detention, and a neutral determination supported by evidence further confirms that Respondents have not demonstrated a nonpunitive justification for Petitioner's continuing detention. Petitioner alleges these defects independently in his procedural due process claim; they also support the conclusion that his present detention is arbitrary and excessive as applied to him.

116. By detaining Petitioner without a demonstrated, present, and proportionate need to prevent flight or danger to the community, Respondents have subjected Petitioner to punitive civil detention in violation of the Fifth Amendment's substantive Due Process Clause.

## Count Four
## Violation of the Administrative Procedure Act: Arbitrary and Capricious Revocation of Release, 5 U.S.C. § 706(2)(A)

117. Petitioner incorporates the preceding paragraphs as though fully set forth herein.

118. The Administrative Procedure Act ("APA") authorizes review of final agency action for which there is no other adequate remedy in a court. 5 U.S.C. § 704. A reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or taken without observance of procedure required by law. 5 U.S.C. § 706(2)(A), (D). The United States has waived sovereign immunity for this nonmonetary relief. 5 U.S.C. § 702.

### A. Discrete and Final Agency Action

119. The agency action challenged in this Count is ICE's discrete September

25, 2026 decision to terminate, or treat as terminated, Petitioner's existing release and to take him into physical immigration custody. Petitioner does not challenge a generalized immigration-enforcement policy, an abstract custody practice, or any later immigration-court custody ruling.

120. This completed action marked the consummation of ICE's decision-making process and produced immediate legal consequences. ICE ended Petitioner's community release and confined him in immigration custody. The decision was neither a preliminary recommendation nor an intermediate step toward a future custody determination. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

121. DHS served the NTA on Petitioner on December 24, 2018. Two days later, on December 26, 2018, ICE reported that Petitioner had been released from ICE custody as "Paroled pursuant to 8 CFR 212.5." *Exs. 2, 3*. At no time have Respondents provided Petitioner or his counsel any contemporaneous written notice or a case-specific explanation for ICE's September 25, 2026 termination and re-detention action. ICE's October 1, 2026 Form I-830E reports only that Petitioner was detained and transferred; it states no reason. *Ex. 8.* No administrative record identifies an individualized determination by an authorized official that the purpose of Petitioner's release had been served, that neither humanitarian reasons nor public benefit warranted Petitioner's continued presence, that Petitioner violated a release condition, or that the conditions of his release had become inadequate.

**B. No Other Adequate Remedy in a Court**

122. Petitioner pleads this APA claim in the alternative, to the extent his habeas and constitutional claims do not provide an adequate judicial remedy for ICE's completed decision to terminate, or treat as terminated, his existing release. Section 704 requires consideration of other adequate remedies in a court, including the habeas relief sought in this Petition, not merely the availability of administrative review. *See* 5 U.S.C. §704. Petitioner therefore does not premise APA review solely on the immigration court's inability to review or vacate ICE's termination decision.

123. A prospective bond or custody determination would not, by itself, resolve whether ICE lawfully terminated Petitioner's existing release. Nevertheless, the availability of habeas relief must be assessed separately. If that relief fully remedies the challenged termination and resulting custody, Petitioner does not seek duplicative APA review merely because the APA provides a different form of relief. If the Court concludes that habeas relief cannot adequately

remedy the challenged termination action, Petitioner preserves this alternative claim for review and appropriate relief under the APA, subject to its remaining requirements.

124. DHS charged Petitioner as an arriving alien, and, upon information and belief, Respondents treat him as detained under INA § 235(b). Under that asserted classification, the immigration court lacks custody-redetermination jurisdiction. That administrative limitation supports the need for judicial review but does not, standing alone, establish the inadequacy of federal habeas relief under § 704. Petitioner accordingly seeks APA review only to the extent no other adequate judicial remedy is available to address the allegedly unlawful termination of his existing release.

**C. The Court May Review Legal Compliance and Reasoned Decision-making**

125. Petitioner does not ask the Court to substitute its judgment for a lawful, discretionary immigration-parole determination. He challenges whether ICE complied with the mandatory legal limits and procedures governing the termination of his release, whether an authorized official made the required individualized determination, and whether the agency gave a reasoned explanation for its action.

126. To the extent Respondents contend that Petitioner's release was parole governed by INA § 212(d)(5)(A) and 8 C.F.R. § 212.5(e), the termination decision is reviewable for compliance with those provisions. INA § 212(d)(5)(A) permits return to custody when the purpose of parole has been served. The regulation further requires written notice and permits termination when the purpose of parole has been accomplished or when an authorized official determines that neither humanitarian reasons nor public benefit warrants the person's continued presence. 8 C.F.R. § 212.5(e)(2)(i). An agency's failure to make and articulate the required individualized determination is not an unreviewable exercise of discretion. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1147 (D. Or. 2025).

127. Alternatively, if Respondents contend that Petitioner's release was not governed by INA § 212(d)(5)(A), Respondents must identify the legal authority and required procedures that authorized ICE to terminate Petitioner's existing release and to re-detain him. The disclosed record identifies no such authority, required finding, or individualized explanation.

128. Petitioner's challenge is directed to the legality of the purported

termination of his existing parole, not to the merits of a discretionary decision whether to grant parole. Although 8 U.S.C. § 1182(d)(5)(A) confers parole discretion on DHS, Petitioner challenges whether Respondents made the determination required to terminate his parole and complied with the applicable notice requirements under 8 C.F.R. § 212.5(e). Section 1252(a)(2)(B)(ii) does not bar review of those predicate legal questions in the circumstances presented here. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025). (rejecting application of § 1252(a)(2)(B)(ii) where the challenged parole termination failed to satisfy governing statutory and regulatory requirements). Petitioner seeks enforcement of those legal requirements, not judicial substitution of judgment for a lawfully exercised discretionary parole determination.

### D. ICE's Action Was Arbitrary, Capricious, and Contrary to Law

129. Agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

130. ICE's September 25, 2026 termination action was arbitrary, capricious, contrary to law, and taken without observance of procedure required by law.

131. First, the administrative record contains no individualized, contemporaneous explanation for terminating Petitioner's release in September 2026. The NTA and release documents were created in December 2018, when ICE paroled Petitioner, and thus do not identify a case-specific basis for the later termination action. *Exs. 2, 3, 4*. The October 1, 2026 Form I-830E states no reason. *Ex. 8.* No disclosed record identifies an alleged release violation, a material change in circumstances, or a determination that Petitioner's existing conditions of release had become inadequate.

132. Second, ICE departed from its prior, individualized decision to permit Petitioner to remain in the community without acknowledging that change or supplying a reasoned explanation for it. When an agency changes course, it must recognize the departure from its earlier position and account for the facts and circumstances that underlay that prior action. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020).

133. Third, ICE failed to consider Petitioner's record on release. Petitioner lived in the community for nearly eight years, remained in his removal proceedings, and pursued his asylum application. DHS itself relieved him of reporting months after his release, a judgment by the agency that minimal supervision sufficed. *Exs. 1, 6.*

134. Fourth, ICE failed to consider the significant and viable alternative of continued release, or of any condition less restrictive than physical detention. The disclosed record identifies no reason why release that had functioned for nearly eight years had suddenly become inadequate, and no individualized explanation why a less restrictive condition could not address any asserted concern.

135. Fifth, ICE failed to consider Petitioner's reliance interests. Petitioner relied on his release to grow up with his family in San Fernando, to attend school, and to pursue his asylum claim. *Exs. 1, 6*. He currently attends Assurance Learning Academy, a Charter School where he is earning his high school diploma.

136. Sixth, no disclosed administrative records in connection with the September 25, 2026 termination and re-detention action identify any facts supporting a conclusion that Petitioner had become a danger, a flight risk, or otherwise unsuitable for continued release. No disclosed record reflects any finding concerning the September 24, 2026 police encounter, which produced no criminal charge. *Ex. 7.* Nor does any disclosed record identify a finding by an authorized official that the purpose of parole had been served or that neither humanitarian reasons nor public benefit warranted Petitioner's continued presence.

137. ICE's termination of Petitioner's existing release, followed by his re-detention, must be set aside as arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and taken without observance of procedure required by law. 5 U.S.C. § 706(2)(A), (D). Vacatur of that action restores the status quo ante, subject to any lawful future action supported by the required individualized determinations and procedures.

## Count Five
## Violation of the Administrative Procedure Act: Revocation Without Observance of Procedure Required by Law, In Excess of Statutory Authority, and Contrary to Constitutional Right, 5 U.S.C. § 706(2)(B), (C), (D)

138. Petitioner incorporates the preceding paragraphs as though fully set forth herein.

139. A reviewing court shall hold unlawful and set aside agency action found to be “contrary to constitutional right, power, privilege, or immunity”; “in excess of statutory jurisdiction, authority, or limitations”; or “without observance of procedure required by law.” 5 U.S.C. § 706(2)(B), (C), (D).

140. Petitioner was released on parole. The Form I-830 executed by ICE on December 26, 2018 states that he was released from ICE custody on the condition “Paroled pursuant to 8 CFR 212.5.” *Ex. 3*. The Notice of Release served the same day designates his release as “Parole with Reporting Requirements.” *Ex. 4*.

141. Petitioner’s release by parole is governed by 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5. The regulation distinguishes automatic termination upon departure from the United States or expiration of the authorized parole period from termination on notice. In cases outside the automatic-termination provision, parole may be terminated only upon accomplishment of the purpose for which it was authorized or when an authorized official determines that neither humanitarian reasons nor public benefit warrants the noncitizen’s continued presence; in either circumstance, DHS must provide written notice. 8 C.F.R. § 212.5(e)(1), (e)(2)(i). Petitioner has not departed the United States since his release, and neither release document states an expiration date or a fixed parole period. *Exs. 1, 3, 4*. Respondents have not identified any departure or any expiration of an authorized parole period before Petitioner’s September 25, 2026 re-detention.

142. The written-notice requirement is mandatory. It is the procedural safeguard the agency adopted to govern termination of existing parole outside the automatic-termination circumstances.

143. After ICE paroled Petitioner on December 26, 2018, Respondents provided no written notice terminating that parole before the September 25, 2026 re-detention. *Exs. 1, 8*. Therefore, Respondents acted without observance of procedure required by law. 5 U.S.C. § 706(2)(D).

144. An agency’s failure to exercise discretion in the manner required by existing valid regulations is a violation of law subject to judicial review. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954). In the Ninth Circuit, the *Accardi* doctrine is not itself a constitutional claim; it provides a basis for relief where an agency fails to follow the regulations governing its action and the noncompliance prejudices the affected party. *Carnation Co. v. Secretary of Labor*, 641 F.2d 801, 804–05 (9th Cir. 1981). An *Accardi* claim may proceed under the APA as distinct from a constitutional due-process claim. *Brown v. Haaland*, No.

3:21-cv-00344-MMD-CLB (D. Nev. Mar. 28, 2024). Respondents' failure to give Petitioner written notice of termination deprived him of notice of the asserted basis for revocation and a meaningful opportunity to contest that basis before ICE took him into physical custody.

145. Courts may review whether DHS complied with the mandatory statutory and regulatory requirements governing termination of immigration parole, notwithstanding limitations on review of discretionary immigration judgments. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1143–47 (D. Or. 2025). Petitioner seeks review of legal compliance and required procedure, not judicial reconsideration of the discretionary merits of a parole determination lawfully made.

146. Respondents also acted in excess of statutory authority. 5 U.S.C. § 706(2)(C). Under 8 U.S.C. § 1182(d)(5)(A), a paroled noncitizen may be returned to custody when, in the opinion of the Secretary of Homeland Security, the purposes of parole have been served. Respondents have not identified the purpose for which Petitioner's parole was granted, a determination by an authorized official that the purpose had been served, or a determination that neither humanitarian reasons nor public benefit warranted Petitioner's continued presence. Petitioner's removal proceedings and asylum application remain pending. Upon information and belief, Respondents made no individualized determination satisfying either the statutory or the regulatory predicate for termination.

147. Under either characterization of the December 26, 2018 release, Petitioner does not ask this Court to review the discretionary merits of an ordinary custody determination. He asks whether the legal and procedural prerequisites for terminating an existing release were satisfied. They were not.

## EXHAUSTION

148. No statutory exhaustion requirement bars this Petition.

149. Petitioner challenges the legality of his detention and the constitutional adequacy of the procedures used to revoke his release. Habeas review is available for such claims.

150. To the extent Respondents argue that Petitioner must further exhaust administrative remedies, the argument has no merit. Petitioner's challenge is to the

violation of his procedural due process rights, not to the result of any bond hearing. Petitioner does not ask this Court to review the discretionary weighing of bond factors. He asks this Court to decide whether Respondents complied with the Constitution and federal law when they revoked his prior release and maintained detention without adequate process.

151. Further exhaustion would be futile. DHS charged Petitioner as an "arriving alien." *Ex. 2.* Upon information and belief, Respondents would take the position that Petitioner is an applicant for admission subject to mandatory detention under § 235(b) pursuant to *Matter of Q. Li*. Under that position, and under the regulation excluding arriving aliens from immigration judges' custody-redetermination authority, 8 C.F.R. § 1003.19(h)(2)(i)(B), an immigration judge would decline to consider Petitioner's release. The immigration courts cannot adjudicate the constitutional revocation issue presented here.

152. An appeal to the Board of Immigration Appeals would not afford an adequate remedy and would not bar this Petition. The Board would review an immigration judge's application of *Matter of Q. Li*, the Board's own precedent, but could not decide whether Respondents' revocation of Petitioner's parole violated the Fifth Amendment or the Administrative Procedure Act. Exhaustion of administrative remedies before a petition under 28 U.S.C. § 2241 is prudential rather than jurisdictional and is excused where the administrative remedy would be futile or inadequate or where irreparable injury would result. *See Laing v. Ashcroft*, 370 F.3d 994, 997–98 (9th Cir. 2004); *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Each additional day of unlawful physical detention is an irreparable

injury that awaiting the Board's decision would only prolong.

153. Constitutional claims are generally excepted from the exhaustion requirement, because neither IJs nor the BIA are permitted to consider constitutional challenges to the statutes they administer. *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013).

**IRREPARABLE HARM**

154. Petitioner is suffering irreparable harm because he remains physically detained in violation of the Constitution. He has been held without any hearing before a neutral decisionmaker at which the Government was required to justify revoking his release. Immigration detention imposes irreparable harms, including separation from family and community, loss of employment and income, and impairment of the ability to prepare immigration claims. *See Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).

155. Petitioner is eighteen years old. He came to the United States at ten and has spent nearly half of his life here, in his mother's care and with his two younger siblings. His detention has separated him from the only household he has known since childhood. *Ex. 1.*

156. Petitioner's detention impairs his ability to pursue his pending application for asylum, withholding of removal, and Convention Against Torture protection, which arises from the cartel's threats against his family and which he must now prepare from a detention facility. *Exs. 1, 6.*

157. Petitioner's detention is keeping him from attending Assurance Learning Academy, the charter high school in which he is enrolled. Ex. 1. The interruption is

putting him behind in the credits he must earn in order to graduate. *Id.* Each additional week of detention deepens that loss, and academic progress lost while he is detained cannot be recovered by relief granted at the end of this case.

158. The harm extends beyond Petitioner. Re-detaining a long-released person at the moment of any police contact, without notice, without a hearing, and regardless of whether any charge follows, substitutes an unadjudicated accusation for the individualized determination the Constitution requires.

## PRAYER FOR RELIEF

Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter;
2. Issue a writ of habeas corpus requiring Respondents to show cause why Petitioner should not be released;
3. Declare that Respondents violated the Fifth Amendment by revoking Petitioner's parole and re-detaining him without constitutionally adequate process;
4. Declare that Respondents' revocation of Petitioner's parole violated the Administrative Procedure Act, and set that action aside pursuant to 5 U.S.C. § 706(2)(A), (B), (C), and (D);
5. Declare that Respondents violated 8 C.F.R. § 212.5(e)(2)(i) by terminating Petitioner's parole without written notice;
6. Declare that *Matter of Q. Li*, INA § 235(b), 8 U.S.C. § 1225(b), and DHS's designation of Petitioner as an "arriving alien," even if relevant to ordinary bond jurisdiction or statutory detention authority, do not resolve whether Respondents violated the Fifth Amendment and the Administrative Procedure Act by revoking Petitioner's existing release from physical custody and re-detaining him without constitutionally adequate notice, individualized reasons, and a neutral hearing;
7. Order Respondents to release Petitioner immediately upon the conditions of parole in effect on September 23, 2026 (the "Baseline Conditions"), which consisted of release on parole pursuant to 8 C.F.R. § 212.5, subject to Petitioner's obligations to appear at all scheduled immigration court

hearings and to keep his address current with the immigration court, and without any requirement of telephonic or in-person reporting; enrollment in Alternatives to Detention or the Intensive Supervision Appearance Program; GPS, electronic ankle or wrist monitoring, or application-based biometric check-ins; curfew; home confinement; unannounced residence checks; or bond;

8. Order that Respondents shall not impose upon Petitioner, as a condition of his release or at any time thereafter, (a) any condition that was not among the Baseline Conditions, or (b) any more restrictive form of any Baseline Condition, unless Respondents first obtain leave of this Court upon a showing by clear and convincing evidence that materially changed circumstances arising after entry of this Court's order render the Baseline Conditions insufficient to secure Petitioner's appearance or to protect the public, and that no less restrictive condition would suffice;

9. Order that Respondents shall not re-detain Petitioner, take him into physical custody, subject him to electronic monitoring, or subject him to home confinement or curfew, without first providing Petitioner a hearing before a neutral decisionmaker at which Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that the restraint sought is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future;

10. Order Respondents to return to Petitioner, upon his release, all personal property and identity documents taken from him at the time of his re-detention;

11. Enjoin Respondents from transferring Petitioner outside this District during the pendency of this action without advance notice to Petitioner's counsel and leave of Court;

12. Enjoin Respondents from removing Petitioner from the United States during the pendency of this action without advance notice to Petitioner's counsel and leave of Court;

13. Award Petitioner reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law;

14. Order Respondents to file a status report confirming Petitioner's release within three days of his release from custody, and order Respondents to notify the Court promptly if release is delayed for any reason; and

15. Grant all other relief the Court deems just and proper.

Dated: October 15, 2026

Respectfully Submitted,
*S/ Mardy M. Sproule*

Attorney for *Omar SantiagoNieto Orozco*
Email: Mardy.Sproule@att.net

## EXHIBIT INDEX


| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| # 1 | Declaration of Petitioner, Omar Santiago Nieto Orozco | 49-53 |
| # 2 | Notice to Appear (Dec. 24, 2018) | 54-57 |
| # 3 | Form I-830, Notice to EOIR: Alien Address, for Petitioner (Dec. 26, 2018) | 58-59 |
| # 4 | Notice of Release and Proof of Service for Petitioner (Dec. 26, 2018) | 60-61 |
| # 5 | Release Documents for Maria Eugenia Orozco Manzo | 62-64 |
| # 6 | Form I-589, Application for Asylum and for Withholding of Removal (filed Dec. 8, 2022) | 65-76 |
| # 7 | Superior Court of California, County of Los Angeles, Name Search (May 13, 2006 – Oct. 15, 2026) | 77-78 |
| # 8 | Form I-830E, Notice to EOIR: Alien Address (Oct. 1, 2026) | 79-80 |
| # 9 | ICE Detainee Locator | 81-82 |
| #10 | Hearing Notice for July 28, 2027 | 83-85 |

# CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2026, I electronically filed the foregoing **PETITION FOR WRIT OF HABEAS CORPUS, PURSUANT TO 28 U.S.C. § 2241; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 702–706** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties shall be served in accordance with the Federal Rules of Civil Procedure.

Dated: October 15, 2026

Respectfully Submitted,
*S/ Mardy M. Sproule*

Attorney for *Omar SantiagoNieto Orozco*
Email: Mardy.Sproule@att.net